**Lorraine JACKSON, Plaintiff,**

v.

**Margaret HECKLER, Secretary of the Department of Health & Human Services, Defendant.**

**No. 84 Civ. 8981 (RWS).**

United States District Court, S.D. New York.

Feb. 21, 1986.

The Legal Aid Soc., New York City, for plaintiff; Douglass J. Seidman, Bebe J. Anderson, of counsel.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, for defendant; Rosemarie E. Matera, Sp. Asst. U.S. Atty., Annette H. Blum, Reg. Atty.—Region II, Tomasina Digrigoli, Asst. Reg. Atty., Office of Gen. Counsel, Dept. of Health and Human Services, of counsel.

SWEET, District Judge.

Plaintiff Lorraine Jackson ("Jackson") brings this motion for an award of attorney's fees pursuant to the Equal Access to Justice Act, (hereinafter "EAJA"), 28

U.S.C. § 2412 awarding reasonable fees and costs to her counsel in this action. For the reasons set forth below, Jackson's motion is granted.

**Facts**

Jackson is a mentally disabled person who has been receiving Social Security disability benefits since approximately 1974. According to the Social Security Administration, (the "SSA") Jackson received an overpayment of Social Security benefits from January 1974 to September, 1975. While Jackson attempted to repay these overpayments for approximately one year, she requested a waiver of this repayment in December, 1983, informing the SSA that she could not afford the monthly deductions from her benefits and that the strain associated with the existence of the debt was aggravating her mental condition. In April, 1984, defendant Margaret Heckler, Secretary of Health and Human Services (the "Secretary") reduced Jackson's installment payments from $40.00 per month to $25.00 per month in response to Jackson's expressed difficulty in repaying the additional benefits.

■ However, the Secretary denied Jackson's request for a waiver of such overpayments. A waiver of repayment of erroneously distributed benefits may be granted if the recipient shows that (1) he was without fault in connection with the overpayment, and (2) recovery would defeat the purpose of the SSI program, be inequitable, or impede efficient or effective administration of Title XVI due to the small amount involved. *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir.1984); 42 U.S.C.A. § 1383(b)(1); 20 C.F.R. § 416.550.

Jackson appeared *pro se* before an Administrative Law Judge ("ALJ") on June 24, 1984 and submitted a medical report from her treating psychiatrist which stated that she could not be accountable for the overpayment and that the pressure caused by the deductions from her benefits and concern over the debt was harming her mental condition. Jackson provided documentation of her living expenses and debts, and stated that she believed the SSA was

sending her the correct amount of benefits at the time of the overpayment. Relying on the report of Jackson's treating psychiatrist, the ALJ found that she was without fault in accepting the overpayment, but declined to waive repayment because it would not defeat the purpose of Title XVI of the Act, be against equity and good conscience, or impede the efficient or effective administration of Title XVI. *Valente v. Secretary of Health and Human Services*, 733 F.2d 1037, 1042 (2d Cir.1984).

Jackson, still without representation of counsel, requested a review of the ALJ's decision by the Appeals Council of the SSA, and submitted additional documentation of her expenses to refute some of the ALJ's contentions to support the application for review. By letter of October 31, 1984, Jackson's request for Appeals Council review was denied, rendering the ALJ's decision final. Jackson then obtained the assistance of counsel and filed this action on December 14, 1984, seeking a reversal, or in the alternative a remand of the denial of an overpayment waiver. On January 17, 1985, Jackson's counsel agreed to extend the Secretary's time to answer or move with respect to the complaint until April 19, 1985. The Secretary's answer denied Jackson's allegations that the decision was not supported by substantial evidence, was based on erroneous legal standards and that Jackson was denied a fair hearing. The Secretary also asserted that Jackson had not shown good cause for a remand.

On June 20, 1985 counsel for both parties had a telephone discussion regarding the submission of motion papers, wherein counsel for the Secretary informed Jackson's counsel that she had not yet determined what posture she would take in the litigation but that she would determine her approach after reading the papers being drafted to support Jackson's motion for judgment on the pleadings filed July 22, 1985. Approximately three months later the parties filed a consent order, signed by this court on October 23, 1985, remanding this case to the Secretary "for the sole purpose of the Secretary issuing a decision

waiving the overpayment at issue in this action." Jackson then filed her motion for attorney's fees on November 27, 1985.

### Discussion

Jackson bases her request for reasonable attorney's fees and costs on two provisions of the EAJA. Section 2412(b), the "bad faith" section, provides that a court may award attorney's fees, expenses and costs to the prevailing party in an action brought against an agency or official of the United States if the defendant acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." 28 U.S.C. 2412(b). Alternatively, Jackson seeks attorney's fees under section 2412(d) of the EAJA because the Secretary cannot demonstrate that her position in the litigation was "substantially justified." 28 U.S.C. § 2412(d)(1)(A).

### Section 2412(b)

■ 28 U.S.C. Section 2412(b) provides that the United States shall be liable for attorney's fees to the same extent as any other party would be liable under common law or statute:

(b) Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

In the Second Circuit, this EAJA exception to the general rule against the awarding of attorney's fees is made when the losing party's claims are "entirely without color" and have been asserted "wantonly for purposes of harassment or delay or for other improper reasons." *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977). While actions leading to the lawsuit as well as conduct during litigation can establish the bad faith of the losing party, *Lauritzen v. Lehman*, 736 F.2d 550, 559 (9th Cir. 1984), an award of fees under this section is a punitive measure and can be imposed "only in exceptional cases and for dominating reasons of justice." *United States v. Standard Oil Co. of California*, 603 F.2d 100, 103 (9th Cir.1979); *Cordeco Development Co. v. Vasquez*, 539 F.2d 256, 263 (1st Cir.1976), *cert. denied*, 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586 (1976).

Jackson contends that the Secretary acted in bad faith at both the administrative and judicial levels of this controversy. According to Jackson, the ALJ failed to develop scrupulously and conscientiously the record by ignoring relevant evidence, misstating the contents of other evidence and making conclusory assumptions about the claimant's expenses. Jackson also asserts that the Appeals Council ignored the applicable law and regulations by failing to review the ALJ's decision in light of the new evidence submitted by Jackson. Finally, the Secretary's pretrial defense of an administrative record rife with error, according to Jackson, was an extension of administrative-level bad faith into the courthouse.

■ However, the administrative record and the prior proceedings before this court do not warrant a finding of bad faith. While Jackson contests the validity of the ALJ's application of the relevant statutes and evaluation of the evidence before him, there is no indication that the ALJ's conclusions were undertaken vexatiously or to harass Jackson in the exercise of her rights. The record reveals that the SSA was responsive to Jackson's difficulties in meeting the repayment schedule and reduced her monthly deductions from $40.00 to $25.00. Even if we assume that the ALJ's weighing of the evidence in light of the applicable regulations was erroneous, the record shows that the ALJ was responsive to Jackson's documentary psychiatric evidence. As the ALJ's conclusions on the second prong of the overpayment waiver test are inherently discretionary, *Valente v. Secretary of Health*

*and Human Services, supra,* 733 F.2d at 1041, the denial of the waiver is not evidence of bad faith absent an indication of improper motive.

■ Jackson claims that the Appeals Councils' denial of review of the ALJ's conclusions despite her submission of new evidence further demonstrates the Secretary's bad faith. The applicable regulations governing Appeals Council review provide:

(a) The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error or law; [or]

(3) The actions, findings or conclusions of the administrative law judge are not supported by substantial evidence; ...

(b) If new and material evidence is submitted with the request for review, the Appeals Council shall evaluate the entire record. It will then review the case if it finds that the administrative law judge's action, findings or conclusion is contrary to the weight of the evidence currently in the record.

20 C.F.R. Section 416.1470(b). The award of attorney's fees and costs under the "bad faith" exception is a punitive measure and is not the equivalent of the failure to adhere to applicable standards of review. A party charging bad faith for the purpose of collecting fees must show that the Secretary acted with oppressive or improper reasons in denying the claimant's application. *Browning Debenture Holders' Committee v. DASA Corp., supra,* 560 F.2d at 1088.

■ Further, the Secretary's pretrial defense of the record below is not vexatious or harassing. Jackson contends that the situation at bar is analagous to *Velazquez v. Heckler,* 610 F.Supp. 328 (S.D.N.Y.1984) where this court found bad faith and awarded attorney's fees pursuant to 28

U.S.C. § 2412(b) based on the Secretary's failure to consent to a remand despite the existence of an adverse decision in a federal class action, which supported the plaintiff's claim that the Secretary had erroneously terminated his disability benefits. However, in the case at bar Jackson has offered no evidence to demonstrate that she is a member of a class action challenging overpayment notices on constitutional grounds,[1] and the Secretary voluntarily consented to a remand in this case for the purpose of waiving the repayment of benefits. Although the Secretary's evaluation of the merits of her position in the litigation might have been more expeditious and more realistic, the Secretary's reevaluation of the administrative record in light of Jackson's motion for judgment on the pleadings was not a demonstration of a bad faith litigation posture. *See, e.g. Lipsig v. National Student Marketing Corp.,* 663 F.2d 178, 181 (D.C.Cir.1980) (a party is not to be penalized for maintaining an aggressive litigation posture nor are good faith assertions of colorable claims to be discouraged, but advocacy simply for the sake of burdening an opponent with unnecessary time and effort warrants recompense).

### Section 2412(d)

Section 2412(d) of the EAJA permits the victorious litigant in an action against the United States to recover reasonable costs and attorney's fees if the government cannot demonstrate that its position in the litigation was "substantially justified." In relevant part, the statute provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) including proceedings for judicial review of agency action, brought

---

**1.** In a footnote to plaintiff's memorandum of law in support of the motion for attorney's fees, Jackson asserts that she is a member of the class which received constitutionally defective overpayment notices in *Ellender v. Schweiker,* 550 F.Supp. 1348 (S.D.N.Y.1982), 575 F.Supp. 590 (S.D.N.Y.1983). She has raised this issue for the first time in the instant motion and has offered no evidence of her membership in this class.

by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances made an award unjust.

. . . . .

Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

. . . . .

"[P]osition of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based ...

28 U.S.C. § 2412(d)(1)(A), (d)(1)(B), (d)(1)(D), as amended by Pub.L. No. 99–80, Section 2, 54 U.S.L.W. 1 (Aug. 5, 1985).

 Under this provision, the government must carry the burden of demonstrating that its position was substantially justified and must make a "strong showing" to meet that burden. *Environmental Defense Fund, Inc. v. Watt*, 722 F.2d 1081, 1085 (2d Cir.1983). In evaluating the question of whether the government's position was substantially justified under 28 U.S.C. § 2412(d), only the litigation position is relevant and not the position taken by the agency itself with respect to the controversy. *Dubose v. Pierce*, 761 F.2d 913, 917 (2d Cir.1985); *Boudin v. Thomas*, 732 F.2d 1107, 1115 (2d Cir.), *reh. denied*, 737 F.2d 261 (1984). The analysis applied to the government's litigation posture is "essentially one of reasonableness." *Wheat v. Heckler*, 763 F.2d 1025, 1028–29 (8th Cir. 1985); *Callejo v. Heckler*, 613 F.Supp. 1229, 1231 (S.D.N.Y.1985). However, it may well be that something more than reasonableness may be required in view of the rejection by the Senate Judiciary Committee of an amendment which would have changed the language from "substantially justified" to "reasonably justified". *See Velazquez v. Hecker, supra*, 610 F.Supp. at 330. While there is no showing that SSA intended to harass Jackson in a bad faith denial of an overpayment waiver, the administrative record contains sufficient errors of fact and law to deprive the agency of substantial justification for its litigation posture.

Jackson filed this action on December 14, 1984 and consented to permit the government an additional sixty days beyond the statutory sixty days to respond to the summons and complaint. By February 7, 1985, the administrative record was complete, affording the Secretary until April 19, 1985 to review a record which demonstrated that the ALJ misstated evidence, ignored Jackson's evidence of her financial needs, and made the unsupported conclusion that she could live on less than her $555.00 monthly income. Despite this record, the Secretary filed an answer on April 19, 1985 denying Jackson's claims and asserting that the Secretary's findings were supported by substantial evidence. The Secretary maintained this denial for three months, until Jackson's counsel filed a motion for judgment on the pleadings on July 22, 1985 at which time the Secretary reversed position and consented to a remand for the sole purpose of granting an overpayment waiver.

When the government is faced with an administrative record which contains errors of law and fact but persists in supporting the decision of the Agency and extends litigation for months until it changes position, the courts of this district have held that the Secretary's litigation position was not substantially justified. *Taverez v. Heckler*, 610 F.Supp. 1059 (S.D.N.Y.1985) (Secretary voluntarily remanded case after plaintiff moved for judgment on the pleadings, attorney's fees awarded). *See also Vega v. Schweiker*, 558 F.Supp. 52 (S.D.N.Y.1983) (The Secretary's position not substantially justified where the court remanded case because ALJ failed to give *pro se* plaintiff a fair and adequate hearing; fees awarded).

The government's *pro forma* denial of all of Jackson's claims, in its answer, followed by an about-face and a voluntary consent to remand demonstrates that the government gave little serious consideration to Jackson's complaint. As Judge Stewart recently stated in *Ramirez-Isalquez v. Heckler*, 632 F.Supp. 100, 102 (S.D. N.Y.1985), a decision granting attorney's fees upon a voluntary remand reversing a denial of benefits: An answer denying all of the plaintiff's substantive allegations totally abandoned later, cannot be seen as a litigation position entered into after serious evaluation of the merits ... The fact that the government ultimately settled, and skipped the usual procedures of cross-motions for judgment on the pleadings, lowers its liability in terms of the amount of fees, but does not absolve it from taking the position it initially did." Under these circumstances, the government's litigation position was not substantially justified and Jackson is entitled to an award of fees pursuant to 28 U.S.C. § 2412(d)(1).

**Amount of Fees**

██ Maximum hourly rates for attorney's fees for prevailing parties in actions where the government's position has been found substantially unjustified under section 2412(d)(1)(A) is set out in 28 U.S.C. § 2412(d)(2)(A)(ii) which provides: "[A]ttorney fees shall not be awarded in excess of $75.00 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee." The EAJA thus specifically permits an increase in the hourly rate based on cost of living increases. *See Action on Smoking and Health v. Civil Aeronautics Board*, 724 F.2d 211, 217 (D.C.Cir.1984); *Natural Resources Defense Council v. Environmental Protection Agency*, 703 F.2d 700, 713 (3d Cir.1983).

[11] Jackson's counsel requests an 18.3% cost of living adjustment in the $75.00 statutory maximum to account for inflation from October, 1981, the date of the amendment adding subsection (d) to 28 U.S.C. § 2412 until September, 1985, calculated in accordance with the Consumer Price Index for urban consumers in the New York Metropolitan area ("CPI"). The Secretary opposes this increase in the maximum hourly rate, asserting that the inflation component should be measured from August 5, 1985, the date of the reenactment of an expired section 2412(d) to October 1, 1981 resulting in an hourly fee of $75.60 adjusted for .8% inflation. Because the government's interpretation of section 2412(d), is not compatible with the reenactment of that section, and defeats the purpose behind a cost of living adjustment, attorney rates will be calculated at $88.73 per hour.[2]

While the Secretary is correct that Section 2412(d) of the original statute expired on October 1, 1984, Pub.L. No. 96–481 § 204(c), 94 Stat. 2327 (1980), this section was amended and reenacted into law in August, 1985, Pub.L. No. 99–80. Congress made its amendments to the EAJA applicable to cases pending on August 5, 1985. Pub.L. No. 99–80, Section 7, 54 U.S.L.W. 2 (Aug. 5, 1985), thereby demonstrating an intent to make Section 2412(d) retroactive as if it had never been repealed. The government's contention that cost of living increases should be calculated as of the reenactment date would defeat both the logic and policy of indexing attorney's fees to the inflation rate. It would result in a February, 1985 award of fees at the rate of $75.60 per hour and an August, 1983 fee award at the rate of $83.00 per hour under the same statute, all in the context of rising cost of living indices. *Cf. Impro Products, Inc. v. Block*, 569 F.Supp. 1389 (D.D. C.1983), *rev'd on other grounds*, 737 F.2d

---

**2.** According to the Declaration of Bebe J. Anderson ("Anderson Declaration") dated November 27, 1985, the CPI was 268 in October, 1981, the effective date of the initial enactment of section 2412(d). In September, 1985, the CPI had increased by 49 points resulting in a CPI of 317; an 18.3% increase. Adjusting the statutory rate of $75.00 per hour by 18.3% results in an hourly rate of $88.73.

1206 (D.C.Cir.1984).. This question is not one of first impression in this Circuit. The Court in *Tavarez v. Heckler, supra,* 610 F.Supp. 1059, 1064 (S.D.N.Y.1985), a case strikingly similar to the one at bar, an award of seven dollar per hour cost of living increase was denied solely because counsel had failed to provide affidavit documentation of the CPI increase. Furthermore, any other reading of the cost of living increase provision would defeat the policy behind adjusting fee rates: "The purpose of the statute was to encourage challenges to agency action, and the cost of living adjustment provision seems designed to provide a disincentive to agencies to prolong the litigation process." *Natural Resources Defense Council v. Environmental Protection Agency, supra,* 703 F.2d at 713.

**Hours Expended**

 The Anderson Declaration provides a careful breakdown of hours, dates, and descriptions of activities comprising the total request of compensation for 65.75 hours. This request is reasonable in the context of this action where Jackson was unrepresented at the administrative level and counsel was unfamiliar with the case until Jackson sought review by a federal district court. Because the Secretary failed to consent to a remand at the outset of litigation but waited until time was expended on the preparation of a motion and supporting memorandum of law for a judgment on the pleadings, considerable legal research was required. Jackson's counsel has not requested reimbursement of costs for undocumented attorney time spent preparing the summons and complaint and the *in forma pauperis* petition.

The sixty-five hours spent preparing this action and fee application is within the range of hours awarded in similar cases in this district. *See Tavarez v. Heckler, supra,* 610 F.Supp. 1059 (Fees awarded for 100 hours of work where counsel prepared a motion for judgment on the pleadings and Secretary consented to a remand); *Velazquez v. Heckler, supra,* 610 F.2d at 332 (Disability claim where Secretary refused

to consent to a remand resulted in an award of 68 hours of which 16.5 was preparation of a fee motion).

For the aforementioned reasons, Jackson's fee application will be granted in the amount of $5,834.00, the product of an hourly rate of $88.73 and 65.75 hours which the Legal Aid Society expended litigating this action.

IT IS SO ORDERED.